HELENE N. WHITE, Circuit Judge,
concurring in part and dissenting in part.
I agree that Nixon v. Missouri Municipal League, 541 U.S. 125, 124 S.Ct. 1555, 158 L.Ed.2d 291 (2004), compels us to reverse the FCC’s preemption of the geographical restrictions of both States’ statutes as well as several other provisions of the North Carolina statute. I write separately to address a few issues left open by the majority, to explain what I understand to be the scope of the clear-statement rule, and because I conclude that at least one of the North Carolina provisions was validly judged by the FCC as pertaining solely to the regulation of broadband, and not the State’s ordering of its government.
The FCC correctly finds in § 706 of the Telecommunications Act of 1996, 47 U.S.C. § 1302, a Congressional grant of authority to preempt the enforcement of state laws that directly conflict with Congress’ intent as expressed in the Telecommunications Act. Section 706’s directive is broad; if the FCC finds that advanced telecommunications capability is not being deployed to all Americans in a reasonable and timely fashion, “it shall take immediate action to accelerate deployment of such capability by removing barriers to infrastructure investment and by promoting competition in the telecommunications market.” 47 U.S.C. § 1302(b). Thus, if telecommunications resources are not being reasonably and timely deployed, the FCC is directed to remove barriers and promote competition. Id. If a state statute is a barrier to infrastructure investment and competition, § 706 authorizes the FCC to remove it by preempting its enforcement. For me, the only question is whether Congress intended to grant the FCC authority to preempt enforcement of state laws restricting municipal authority.
As the majority explains, Nixon makes clear that Gregory's[1] clear-statement requirement applies to the FCC’s powers under the Telecommunications Act to preempt state laws concerning municipal authority to provide telecommunications services. Maj. Op. at 612-14. The FCC is no doubt accurate in its characterization of the statutes at issue as legislation intended to further the States’ “own policy goals about optimal competitive and investment conditions in the broadband marketplace,” and as effectuating a judgment that “incumbent broadband providers require protection from what they regard as unfair competition.” In re City of Wilson, N.C. Petition for Preemption of N.C. General Statute Sections 160A-340 et seq., 30 FCC Red. 2408 (March 12, 2015). Nevertheless, as the majority observes, a statute can address both governmental authority and the effectuation of substantive policy. Maj. Op. at 611-12. The statutory provisions imposing geographical limitations on the provision of broadband clearly concern the States’ arrangements for conducting their own governments, including how municipalities interact with each other. Likewise, the provisions of the North Carolina law that require notice, comment, a hearing process, and a special election before a municipality can construct a telecommunications network clearly involve the core of the State’s regulation and control of the power granted to its municipalities, as does the provision barring a municipality from subsidizing its communications service with funds from other sendees. Because these provisions address the States’ historic authority to govern through its subdivisions, a clear statement of Congressional intent to preempt that authority is necessary.
*615 I do not, however, understand the dear-statement cases to require a clear statement whenever the state statute or regulation sought to be preempted affects local government in any fashion. The rationale for requiring a clear statement is that certain powers and spheres are historically so clearly confided to the States that Congress should not be understood to preempt the States’ authority to act freely in those areas unless its intent is clear. North Carolina’s requirement that municipalities impute the costs of private providers when pricing municipal services, including telecommunication. services, N.C. Gen. Stat. § 160A-340.1(a)(8), has little to do with the State’s core sovereign power to order its government. Rather, it is an expression of its telecommunications policy that private providers must be protected from a municipal provider’s unfair advantage. While the other provisions discussed above serve dual purposes that preclude their preemption even if the eommunications-policy purpose is in reality paramount, the provision requiring the imputation of costs is exclusively regulatory and commercial.
Lastly, I agree that the FCC’s preemption decision is not entitled to Chevron deference. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Chevron applies only where “Congress has not directly addressed the precise question at issue” and the “statute is silent or ambiguous with respect to the specific issue” leaving the agency to fill the gap. Id. at 842-43, 104 S.Ct. 2778. But that very silence or ambiguity with respect to whether Congress intended to preempt the states’ regulation of their subdivisions triggers application of the clear statement rule; thus, application of Chevron deference to the FCC’s determination that it has the authority to preempt in this situation — as distinguished from the decision whether to exercise the authority to preempt — would turn the clear statement rule on its head.